UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS J. WRIGHT,

                         Petitioner,                   Case Number 2:07-CV-10965
                                                       Honorable Nancy G. Edmunds

v.

CAROL R. HOWES,

                         Respondent.
_____/

**OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS
CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING
PERMISSION TO PROCEED ON APPEAL IN FORMA PAUPERIS**

This matter is before the Court on Petitioner Thomas J. Wright's petition for a writ

of habeas corpus filed under 28 U.S.C. § 2254.  On January 12, 2004, Petitioner was

convicted after a jury trial in the Wayne Circuit Court of one count of extortion. MICH. COMP.

LAWS § 750.213. Petitioner was sentenced as a fourth-time habitual felony offender to ten-

to-twenty years in prison.  The petition raises four claims: (1) Petitioner's statement to the

police was the product of an unlawful arrest; (2) the jury instructions regarding the element

of intent were erroneous; (3) Petitioner was denied access to his attorney during trial; (4)

the prosecutor failed to exercise due diligence in producing witnesses at trial; and (5) trial

counsel was ineffective for failing to ensure the prosecution produced all of its witnesses

at trial.  The Court will deny the petition because Petitioner's first and second claims are

meritless and review of his third through fifth claims is barred by his procedural default. The

Court will also deny Petitioner a certificate of appealability and deny permission to proceed

on appeal informa pauperis.

## I. Facts and Procedural History

This case arose after a Krispy Kream truck was stolen, and the perpetrator threatened to destroy it unless he was paid $100.

At Petitioner's trial, Clinton Stills testified that he was a delivery man for Krispy Kreme donuts.  In the early morning hours of August 25, 2003, he was making a delivery at a gas station in Plymouth, Michigan. As Stills was gathering donuts in the back of the truck, he felt it lurch forward.  Stills jumped out of the back of the truck.  He turned and saw a white arm, probably male, resting on the driver's window.  Stills called the police.  He told them that his dispatch radio, labeled "KK-2," was still in the center console of the truck.

A short time later, Didier Rodriguez, a Krispy Kreme dispatcher, called the Plymouth police.  He told them that a man had called them using Stills' dispatch radio.  The man claimed that someone had tried to sell him the truck for $100, but he only bought the dispatch radio for $5.  The man instructed Rodriguez to meet him at a gas station in Detroit where he could recover the truck for $100.  Rodriguez had the man confirm the license plate number on the truck.  Then, when Rodriguez told the man that he would drive to Detroit, the man responded: "You need to come here right now and bring the money, otherwise I will blow up the truck."  A woman and another man then got on the phone and demanded that Rodriguez bring the money.  The man called back several times more threatening to blow up the truck if the money was not delivered.

Meanwhile, at approximately 4:30 a.m., officers from the Detroit Police Department were en route to the gas station identified by the caller.  One officer spotted a white male, later identified as Petitioner, standing by a pay phone.  As the officer approached Petitioner, Petitioner saw the scour car, got into a white pickup truck, and drove away.  The officer

-2-

made a traffic stop.  When he walked up to the vehicle, the officer saw numerous bags of Krispy Kreme donuts in the open bed of the truck.  He asked Petitioner and a female passenger to get out of the vehicle.  When they exited the pickup, the officer saw the dispatch radio labeled "KK-2" laying on the seat.

Petitioner was arrested.  He was advised of his rights and agreed to make a statement.  Petitioner claimed that he was approached by a man who offered to sell him a Krispy Kreme truck for $100.  He stated that he used the dispatch radio to contact Krispy Kreme to arrange for the return of the truck, and the dispatcher offered to give him some money as a reward.

The jury found Petitioner guilty as charged, and Petitioner was subsequently sentenced as a fourth-time habitual offender to ten-to-twenty years in prison.

Thereafter, the state court appointed Petitioner appellate counsel to pursue a direct appeal.  Appellate counsel filed an appellate brief, raising the following claims:

I. Appellant's statement and other evidence was the product of an illegal arrest and must be suppressed.

II. The trial court incorrectly instructed the jury upon the required intent element of aiding and abetting.

The Court of Appeals affirmed Petitioner's conviction in an unpublished opinion. *People v. Wright*, No. 254004 (Mich. Ct. App. Nov. 17, 2005).

Petitioner then filed an application for leave to appeal in the Michigan Supreme Court raising the two claims he raised in the Court of Appeals and the following additional claims:

III. Defendant was denied a fair and impartial trial, and denied his constitutionally protected due process rights, Const Amend V, VI, XIV. Defendant was denied access to his attorney and the presumption of

-3-

innocence. Also abuse of discretion of the trial court for not allowing the defendant to be seated next to his attorney.

IV. Defendant was denied his due process right to a fair trial when the prosecution did not exercise due diligence by producing all res gestae witnesses with material testimony. Defense counsel was ineffective for not requesting an evidentiary hearing and not for objecting to the non-production of res gestae witnesses.

The Michigan Supreme Court denied leave to appeal. *People v. Wright*, 475 Mich. 884 (2006) (table).

On March 6, 2007, Petitioner filed the instant petition for writ of habeas corpus. On Petitioner's motion, the petition was stayed on November 27, 2007, so that he could exhaust his state court remedies.

Meanwhile, Petitioner filed a motion for relief from judgment in the trial court on October 5, 2007. The motion claimed that he was denied equal protection and the due process of law because he was denied 158 days sentencing credit. The trial court denied the motion on December 21, 2007, because Petitioner's sentencing claim was without merit. Petitioner did not appeal this denial of his motion for relief from judgment to the Michigan Court of Appeals or Michigan Supreme Court.

Petitioner filed second motion for relief from judgment on January 14, 2008, raising the following claims:

I. Defendant was denied a fair and impartial trial, and denied his constitutionally protected due process rights, const amend V, VI, & XIV. Defendant was actually prejudiced by ineffective appellate counsel violating his federal constitutional right to appellate counsel and that failure/refusal to raise meritorious/nonfrivolous federal constitutional claims/issues.

II. Defendant was actually prejudiced by ineffective trial/appeal counsel violating his federal constitutional right to a trial/appeal counsel for failing/refusing to raise insanity defense/issue at trial/appeal.

-4-

III. Defendant was actually prejudiced by being denied his federal constitutional right to access to his attorney, and the presumption of innocence.

IV. Defendant was prejudiced by being denied his federal constitutional right to a fair trial and confront/present witnesses. When the prosecution failed to exercise due diligence by not producing all res gestae witnesses and material testimony.

V. Defendant was actually prejudiced by ineffective trial counsel violating his federal constitutional right to a competent trial attorney when trial counsel filed to object to the non-production of res gestae witnesses and for failing to have material witnesses supportive of his defense produced.

On October 15, 2009, the trial court denied the motion as a prohibited second or successive petition under Michigan Court Rule 6.502(G)(2).

Petitioner filed a delayed application for leave to appeal the denial of the motion. The Michigan Court of Appeals denied the application for leave to appeal for lack of jurisdiction under Rule 6.502(G)(2). *People v. Wright*, No. 295472 (Mich. Ctr. App. June 3, 2010). The Michigan Supreme Court likewise denied Petitioner's application for leave to appeal because the motion for relief from judgment was prohibited by Rule 6.502(G). *People v. Wright*, No. 141354 (Mich. Sup. Ct. Dec. 20, 2010).

Petitioner then moved to reopen his habeas case on January 18, 2011.  The Court granted the motion on February 14, 2011.

Petitioner raises the following claims in this action:

I. Petitioner's statement and other evidence were the product of an illegal arrest.

II. The trial court incorrectly instructed the jury about the elements of intent and aiding and abetting.

III. Petitioner was denied access to his attorney and the presumption of innocence.

-5-

IV. The prosecution failed to exercise due diligence by not producing all res gestae witnesses and material testimony.

V.  Petitioner was denied ineffective assistance of counsel when he failed to object to the non-production of res gestae witnesses and for failing to have material witnesses supportive of his defense produced.

## II. Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Pursuant to the AEDPA, Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[a] federal court's collateral review of a

state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S.Ct. 1855, 1862, 176 L. Ed. 2d 678 (2010)((*quoting Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011)(*citing Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (*citing Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* "[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 131 S. Ct. at 786.

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal

justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (*citing Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*, at 786-787.

### III. Analysis

**A. Illegal Arrest**

Petitioner asserts that he is entitled to habeas relief based upon an alleged violation of the Fourth Amendment.  Specifically, he asserts that the police did not have probable cause to arrest him, and that evidence obtained as a result of the illegal arrest should have been suppressed.

Federal courts will not address a Fourth Amendment claim on habeas review if the petitioner had a full and fair opportunity to litigate the claim in state court and the presentation of the claim was not thwarted by any failure of the state's corrective processes. *See Stone v. Powell*, 428 U.S. 465, 494-95 (1976). A court must perform two distinct inquiries when determining whether a petitioner may raise a claim of illegal arrest in a habeas action. First, the "court must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth amendment claim. Second, the court must determine whether presentation of the claim was in fact frustrated because of a failure of that mechanism." *Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000) (quoting *Riley v. Gray*, 674 F.2d 522 (6th Cir. 1982)).

"Michigan has a procedural mechanism which presents an adequate opportunity for

-8-

a criminal defendant to raise a Fourth Amendment claim." *Robinson v. Jackson*, 366 F. Supp. 2d 524, 527 (E.D. Mich. 2005). This procedural mechanism is a motion to suppress, ordinarily filed before trial. *See People v. Ferguson*, 376 Mich. 90, 93-94, 135 N.W.2d 357, 358-59 (1965) (describing the availability of a pre-trial motion to suppress); *see also People v. Harris*, 95 Mich. App. 507, 509, 291 N.W.2d 97, 99 (1980) (analyzing the legality of a warrantless search, seizure, and arrest even though raised for the first time on appeal). Consequently, Petitioner is entitled to relief on this issue only if he establishes that he was prevented from litigating the Fourth Amendment issue by a failure of Michigan's procedural mechanism.

Petitioner has not done so. The record reveals that Petitioner challenged the propriety of his arrest under the Fourth Amendment by filing a motion to suppress the evidence obtained after his arrest. The state trial court held an evidentiary hearing on the motion and denied it. Petitioner then raised his Fourth Amendment issue before the Michigan Court of Appeals, which denied relief on the merits, and before the Michigan Supreme Court, which denied leave to appeal. Consequently, it is clear that the Michigan courts were cognizant of Petitioner's Fourth Amendment claim and that he received all the process he was due. Accordingly, his claim challenging the validity of his arrest is not cognizable on habeas review pursuant to *Stone v. Powell*. Habeas relief is not warranted.

## B.  Jury Instuctions

Petitioner's second claim asserts that the trial court incorrectly instructed the jury regarding the "threat" element for extortion when it answered a note sent by the jury during its deliberations.  The Michigan Court of Appeals found that "viewing the jury instructions

-9-

and the factual situation as a whole, we conclude that the jury instructions fairly presented the issues to be tried and that defendant's substantial rights were not violated by the trial court's answer to the jury's question." *People v. Wright,* No. 254004, at **6-7.

"Generally speaking, a state court's interpretation of the propriety of a jury instruction under state law does not entitle a habeas claimant to relief." *Rashad v. Lafler*, 675 F.3d 564, 569 (6th Cir. 2012) (citing 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)). As the Sixth Circuit has explained, "[t]he exception is when the instruction is so flawed as a matter of state law as to 'infect[] the entire trial' in such a way that the conviction violates federal due process." *Ibid.* (citing *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)). Other formulations of that test use even stronger language. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)("[I]t must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some [constitutional] right . . . ."). When assessing a potential due process violation, the jury instruction "'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." *Estelle*, 502 U.S. at 72 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).

In this case, during the initial instructions, the trial court instructed the jury about the element of threat for the offense of extortion:

> A threat for the purpose of extortion is a written or spoken statement of an intent to injure another person or that person's property or that person's family. A threat does not have to be stated in any particular words. It can be said in general or vague terms without saying exactly what kind of injury is being threatened. It can also be made by suggestion. However, a threat had to be definite enough to be understood by a person of ordinary intelligence as being a threat of interest.

Tr 1/12/04, at 40.

-10-

After some period of deliberations, the jury sent a note asking whether being part of an extortion scheme is the same as making a threat. The trial court assembled the jury and asked what they meant by the question. The jurors clarified by asking if three people are sitting in a car together and one of them makes a threat to blow up a truck over the phone with the other two knowing about it, whether all three are guilty of extortion. Id., at 42-43.

The trial court then read the jury the following additional instruction:

> The law says basically that anyone who intentionally assists someone else in committing a crime is a guilty as the person who directly commits it.

> The law says that it does not matter how much help or encouragement a person gives. However, as the trier of fact you must decide whether a person intended to help another commit a crime and whether the help, admice, or encouragement actually did help, advise, or encourage a crime.

> The law further states that mere presence even with knowledge that an offense is about to be committed or is being committed is not enough to make a person liable.

> Passive, acquiescence, consent and mere mental approval are also insufficient. So that it says that even if a person knew a crime was planned or being committed, the mere fact that he was present when it was committed is not enough to prove that a person assisted in committing.

Id., at 43-44.

The state appellate court reasonably found that this instruction fairly informed the jury of the law to be applied to the facts of Petitioner's case. Michigan law abolished the common law distinction between aiders and abettors and principals, and provides that aiders and abettor may be prosecuted and convicted as though they had directly participated in the crime. MICH. COMP. LAWS § 767.39; see also *People v. Palmer*, 392 Mich. 370, 378, 220 N.W.2d 393, 396 (1974). The evidence at trial indicated that the

perpetrator acted in concert with at least one woman and perhaps another man.  The testimony of the dispatcher indicated that all three people made threats at different points during the phone conversations.  If the jury had a question as to which role Petitioner played, and whether the extent of his involvement made him criminally liable, those questions were accurately answered by the supplemental instruction.

Because the complained-of instruction was not so flawed as to violate due process, the claim is without merit.


**C.  Claims Raised in Second Motion for Relief From Judgment**

Petitioner's remaining claims (claims three through five) were not presented to the state courts until he filed his second motion for relief from judgment.  The trial court rejected Petitioner's second motion for relief from judgment under Michigan Court Rule 6.502(G)(1) (stating that "one and only one motion for relief from judgment may be filed with regard to a conviction"), because Petitioner had already filed a motion for relief from judgment and had not presented new evidence to the trial court that would entitle him to file a second motion. See MICH. CT. R. 6.502(G)(2) ("A defendant may file a second or subsequent motion based on a retroactive change in law that occurred after the first motion for relief from judgment or a claim of new evidence that was not discovered before the first such motion."). The Michigan Court of Appeals and Michigan Supreme Court likewise rejected Petitioner's appeal for lack of jurisdiction because state law does not allow a defendant to appeal the denial or rejection of a successive motion for relief from judgment. MICH. CT. R. 6.502(G)(1) ("A defendant may not appeal the denial or rejection of a successive motion.").

These claims are procedurally barred from federal habeas review. "[P]rocedural

default results where three elements are satisfied: (1) the petitioner failed to comply with a state procedural rule that is applicable to the petitioner's claim; (2) the state courts actually enforced the procedural rule in the petitioner's case; and (3) the procedural forfeiture is an 'adequate and independent' state ground foreclosing review of a federal constitutional claim." *Willis v. Smith*, 351 F.3d 741, 744 (6th Cir. 2003) (quoting *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)). Rule 6.502(G), the procedural rule relied on by the state courts to deny Petitioner relief with respect to these claims, is an adequate and independent state ground sufficient to invoke procedural default because the rule was "firmly established and regularly followed" before Petitioner submitted his application for leave to appeal. *Porter v. Smith*, 197 F. Supp. 2d 827, 833 (E.D. Mich. 2002).

Because the elements of procedural default have been satisfied, Petitioner must show "cause" for failing to comply with the State's procedural rule and "actual prejudice" as a result of the alleged violation of federal law. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Alternatively, Petitioner must demonstrate that a fundamental miscarriage of justice will occur as a result of the Court's failure to consider the substantive merits of his claim. *Id.*

Constitutionally ineffective assistance of counsel is "cause" for a procedural default. *McCleskey v. Zant*, 499 U.S. 467, 494 (1991). However, a claim of ineffective assistance of appellate counsel does not address Petitioner's failure to raise these claims in his first motion for relief from judgment. It was this omission which caused the procedural bar of his remaining claims. Therefore, any asserted misconduct of his appellate attorney could not serve as cause for petitioner's procedural default.

Petitioner has not alleged any other adequate reason why he did not raise these

-13-

claims on direct appeal or in his first post-conviction motion. A habeas petitioner's pro se status and ignorance of rights at the state court level does not constitute cause which would excuse the procedural default. *Hannah v. Conley*, 49 F.3d 1193, 1197 (6th Cir. 1995). Since cause has not been shown, the Court need not consider whether actual prejudice has been demonstrated. *See Smith v. Murray*, 477 U.S. 527, 533, 106 S. Ct. 2661, 91 L. Ed. 2d 434 (1986); *Long v. McKeen*, 722 F.2d 286, 289 (6th Cir. 1983).

The narrow exception for fundamental miscarriages of justice is reserved for the extraordinary case in which the alleged constitutional error probably resulted in the conviction of one who is actually innocent of the underlying offense. *Dretke v. Haley*, 541 U.S. 386, 388 (2004); *Murray v. Carrier*, 477 U.S. 478, 496 (1986). A claim of actual innocence "requires [the] petitioner to support his allegations of constitutional error with new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Petitioner has failed to present evidence supporting a credible claim of innocence; therefore, a miscarriage of justice will not occur as a result of the Court's failure to consider the substantive merits of Petitioner's claims in spite of the procedural default. Accordingly, review of Petitioner's claims three through five is procedurally barred.

## IV. Certificate of Appealability

Before Petitioner may appeal this decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  When a district court denies a habeas claim on the merits,

-14-

the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, a court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the claims. *Id.* at 336-37.  The Court concludes that a certificate of appealability is not warranted in this case because reasonable jurists could not debate the Court's assessment of Petitioner's claims.  The Court will also deny Petitioner permission to proceed on appeal in forma pauperis because an appeal could not be taken in good faith.

### V. Conclusion

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that permission to proceed on appeal in forma pauperis is **DENIED**.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  January 2, 2013

-15-

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 2, 2013, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager